A92A0573. CHANDLER v. THE STATE.

(421 SE2d 288)

ANDREWS, Judge.

Antonio Chandler was convicted by a jury of aggravated assault and aggravated battery upon a police officer engaged in the performance of her official duties; possession of a firearm while committing these offenses, and possession of a firearm by a convicted felon.

Viewed in favor of the verdict, the evidence shows that Chandler and three co-defendants, armed with handguns, drove together in a car to the Thicket Apartments in DeKalb County at about 11:15 p.m. on September 26, 1990, for the purpose of robbing a certain Thicket resident who they believed carried large sums of money. Upon arrival, they drove through the complex looking for a blue-colored car owned by the resident. By chance, DeKalb County Police Officer, Tina Dillard, who lived at Thicket Apartments, arrived home in uniform driving her blue Honda, which was similar to a blue Honda owned by the targeted resident. Upon parking her car, Officer Dillard watched as the defendants pulled their Camaro in behind her car. Although she could not identify any individual defendant, Officer Dillard observed that the Camaro was occupied by four young black males — a description consistent with the four co-defendants. At least two of the defendants exited the car. Officer Dillard saw one of the men walk to the passenger side of her car, and another positioned himself on her driver's side behind a car she had parked next to. She looked out the passenger side, and saw a man wearing a ski mask and pointing a gun at her. As she reached for her service weapon, the defendant on the passenger side opened fire, and another defendant immediately began firing at her from the opposite side. As she moved to exit the car, Officer Dillard was struck first by a bullet in her face, and then by

another bullet in her side. Despite her wounds, she took cover between her car and the adjacent car, and returned fire until the gunmen fled on foot, and the driver sped off in the Camaro.

Officer Dillard was hospitalized for bullet wounds to her face and side. In addition to the resulting scars, at the time of trial, she was expecting to undergo additional surgery for removal of the bullet which remained lodged in her face. At the scene, police found two handguns, a .38 revolver and a .357 revolver, bullet fragments, numerous spent bullet casings, and Officer Dillard's bullet-riddled car. The Camaro, with bullet holes and shattered glass, was found abandoned the next day.

One of the co-defendants, Andre Lewis, was apprehended the night of the shooting about a half-mile from the scene. After first giving the police false names for the co-defendants, Lewis identified Anthony Gates, Olin Dismuke, and Antonio Chandler as the others involved in the shooting. Arrest warrants were issued, and several days after the shooting Dismuke turned himself in to police. Dismuke testified as follows: He, Chandler, Gates, and Lewis drove to Thicket Apartments on the night of the 26th in the Camaro to take some money from a known gambler called Joe For Show, who lived there. Dismuke drove the car, and Chandler, Lewis, and Gates had handguns. As they were driving around the apartment complex looking for Joe For Show's blue car, Chandler spotted Officer Dillard's blue Honda, and said, "That's the car right there. Let's get out and let's get him." Chandler, Gates, and Lewis got out, and put on ski masks. Chandler went to the passenger side of the Honda with his gun pulled, and when he saw Officer Dillard reach for her weapon, he fired first. Gates immediately started shooting from the opposite side. Officer Dillard fired back, and the others ran off. Dismuke ducked as Officer Dillard's shots hit the Camaro. He was grazed in the head by one shot, then drove off and later abandoned the car. Chandler called Dismuke the next day, and told him that when he looked in the car and saw that Dillard was a police officer, he shot her in the face. Chandler also told Dismuke he knew Lewis had been caught.

The State presented evidence of statements made by Chandler. About a week after the shooting, police received information that Chandler could be found in an apartment in Fulton County. During a search of the apartment, Chandler was found hiding under a pile of clothes in a closet. As he was pulled up from the floor, Chandler blurted out, "I was there. I didn't shoot anybody." In later statements, he told police he could take them to Gates, the only co-defendant who had not been apprehended at that point. When questioned about his relationship to the co-defendants, Chandler told police he knew Lewis and Dismuke because they worked for him selling cocaine. He also said that a man called T-Rocks, who lived at

Thicket Apartments, worked for him, and had been robbed of money which belonged to Chandler. Chandler later gave another statement denying that he was present or involved in the shooting. Chandler did not testify at the trial.

Gates was apprehended and testified at trial that Chandler was not present at the shooting. However, Gates admitted that prior to the trial he had told police and the district attorney that he was present at the shooting along with Chandler, Lewis, and Gates, and that he saw Chandler fire his gun. Evidence also showed that Gates told police Chandler was the gunman on the passenger side of Officer Dillard's Honda, and that Chandler was the leader of the operation whose idea it was to go to Thicket Apartments.

After a verdict was returned on all the other counts against Chandler, the State presented evidence of Chandler's previous armed robbery conviction in support of the remaining count of possession of a firearm by a convicted felon.

1. Chandler claims the trial court erroneously put his character into issue by admitting, over a continuing objection, evidence that Lewis, Dismuke, and a person called T-Rocks sold cocaine for Chandler. During arguments on Chandler's motion in limine to exclude this evidence, the State contended it was relevant to show that Chandler and the three co-defendants went to Thicket Apartments to commit an intended robbery or "hit" for the purpose of stealing cocaine money. On this representation, the trial court denied the motion in limine, and allowed Chandler a continuing objection. At the close of the evidence, Chandler moved for a mistrial claiming the state failed to produce any evidence demonstrating the relevancy of Chandler's cocaine dealings.

The State presented no evidence to show that the co-defendants went to Thicket Apartments for a cocaine-related purpose. The evidence showed only that Joe For Show, the intended victim who lived at the complex, was a gambler known to carry large sums of money. There was no evidence tying Joe For Show to the robbery of cocaine money from T-Rocks, who worked for Chandler and lived at the same complex. At best, this evidence showed a relationship, unrelated to the present events, between Chandler and two co-defendants in which Chandler was the leader. The State clearly established the co-defendants' presence and Chandler's role without the cocaine connection.

Generally, no evidence of the defendant's bad character is admissible unless the defendant first put his character into issue. *Stanley v. State*, 250 Ga. 3 (295 SE2d 315) (1982); *Causey v. State*, 154 Ga. App. 76, 79 (267 SE2d 475) (1980). However, if evidence is relevant and material to an issue in the case it is not excluded because it also incidentially places the defendant's character into evidence. *Norman v. State*, 197 Ga. App. 333, 336 (398 SE2d 395) (1990). We conclude that

evidence of Chandler's cocaine dealings was not relevant for any permitted purpose, and erroneously placed the defendant's character into issue. OCGA §§ 24-2-2; 24-9-20 (b); *Jones v. State*, 257 Ga. 753, 754-760 (363 SE2d 529) (1988).

Nevertheless, because the defendant must demonstrate harm as well as error to warrant a reversal, we decline to hold this is reversible error. Given the eyewitness testimony of Dismuke, along with the defendant's own statements and those of Gates, the error was harmless because it is highly probable it did not contribute to the jury's verdict.[1] *Johnson v. State*, 238 Ga. 59, 60-61 (230 SE2d 869) (1976); *Worley v. State*, 201 Ga. App. 704, 707 (411 SE2d 760) (1991); *Baptiste v. State*, 190 Ga. App. 451, 452-453 (379 SE2d 165) (1989); *Dye v. State*, 177 Ga. App. 824, 825 (341 SE2d 314) (1986). Since no mistrial was mandated to ensure a fair trial, the trial judge did not abuse his discretion by denying Chandler's motion. *Stanley*, supra at 4; *Dye*, supra at 825. Moreover, "[a] motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it." (Citations and punctuation omitted.) *Worley*, supra at 705; compare *Baptiste*, supra at 452 (continuing objection coupled with continuing motion for mistrial at the time testimony was admitted).

2. Chandler contends that testimony presented by the State from Annette Handley was exculpatory, and was not provided to Chandler prior to trial in violation of his written request for such material made under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Contrary to his pre-trial statements, Gates testified Chandler was not present at the shooting, and that he told police someone named Shorty or Black did the shooting. He denied that he knew Chandler as Shorty. The State called Handley, Gates' girl friend, who testified that she knew Chandler through Gates, and that she had heard Gates and others refers to Chandler as Shorty. *Brady* protects defendants from the prosecution's suppression of exculpatory evidence. *Walter v. State*, 256 Ga. 666, 668 (352 SE2d 570) (1987). The primary value of Handley's testimony was not exculpatory of Chandler, but inculpatory since it corroborated evidence of Gates' pre-trial statements to police that he knew Chandler as Shorty, and that Chandler did the shooting. Even if it had some value to Chandler as impeachment of Gates, it is not information of such value that its nondisclosure would amount to a constitutional violation of the defendant's right to a fair trial under *Brady*. *Brooks v. State*, 182 Ga.

---

[1] In its charge to the jury, the trial court instructed that any evidence of improper or criminal conduct was to be considered only as it may be relevant to proof of other facts and circumstanes surrounding the incident on trial, and should have no other part in their consideration of guilt and innocence.

App. 144, 145 (355 SE2d 435) (1987). Moreover, there is no evidence the State suppressed the impeaching value of the evidence in violation of *Brady*, since it was disclosed at trial after Gates' testimony and prior to Handley's appearance. *Castell v. State*, 250 Ga. 776, 781-782 (301 SE2d 234) (1983).

Alternatively, Chandler asserts that Handley's testimony that she heard others besides Gates refer to Chandler as Shorty was inadmissible hearsay. Even if it was, it was cumulative of other evidence presented at trial which established Chandler's involvement in the shooting, and does not constitute reversible error. *Moon v. State*, 199 Ga. App. 94, 97 (404 SE2d 273) (1991).

3. Chandler asserts that the trial court neglected to charge the jury that an essential element of aggravated assault and aggravated battery on a peace officer, as charged in the indictment, was that Chandler knew the victim was a police officer. In its charge, the trial court read the aggravated assault and aggravated battery counts to the jury, which provided: (Count one) that the defendant "did make an assault on the person of Officer Tina Dillard, with a handgun, a deadly weapon, knowing that said Officer Tina Dillard was a peace officer engaged in the performance of her official duties." See OCGA § 16-5-21 (a) (2), (c). (Count two) that the defendant "maliciously caused bodily harm to another, to-wit: Officer Tina Dillard by seriously disfiguring her body, to-wit: her face by shooting her with a handgun while she was engaged in the performance of her official duties." See OCGA § 16-5-24 (a), (c). The trial court elsewhere defined the elements of the offenses of aggravated assault and aggravated battery, but in doing so did not instruct that an element of the charged offenses was that the defendant acted with knowledge that the victim was a peace officer. In concluding its charge, the trial court instructed the jury on the use of special verdict forms employed for the aggravated assault and aggravated battery counts by charging the jury that if it found the defendant guilty of aggravated assault and aggravated battery, it must decide as an additional issue as to each of those counts whether the assault (or battery) was made on a police officer engaged in the performance of her official duties.

For both counts the court provided separate special verdict forms with spaces for the jury to determine whether the defendant was guilty or not guilty of aggravated assault and aggravated battery. Then the forms presented the same question with respect to the aggravated battery and aggravated assault counts: "If the jury finds the defendant guilty of aggravated assault [battery], was the assault [battery] made on a police officer while the police officer was engaged in the performance of her official duties?" The forms indicate the jury concluded the defendant was guilty of aggravated assault and guilty of aggravated battery. The jury responded yes to the propounded

question on the aggravated assault and aggravated battery verdict forms.

As charged in counts one and two of the indictment, the defendant was charged with the offenses of aggravated assault on a police officer, and aggravated battery on a police officer. Under *Bundren v. State*, 247 Ga. 180, 181-182 (274 SE2d 455) (1981), the Supreme Court has held that the charge of aggravated assault on a police officer states an offense requiring proof of the essential element that the defendant knew the victim was a police officer. OCGA § 16-5-21 (c). The charge of aggravated battery on a police officer is defined in similar terms, and, likewise, includes as an essential element that the defendant knew the victim was a police officer. OCGA § 16-5-24 (c). The failure to instruct the jury that an essential element on both of these charges is that the defendant knew the victim was a police officer ordinarily requires either reversal and remand for a new trial, or resentencing on the lesser included offenses of aggravated assault and aggravated battery. See *Bundren*, supra at 181-182; *Hudson v. State*, 189 Ga. App. 201, 202 (375 SE2d 475) (1988); *Britt v. State*, 184 Ga. App. 445, 446 (361 SE2d 710) (1987). Although the trial court in *Cornwell v. State*, 193 Ga. App. 561, 562 (388 SE2d 353) (1989), failed to specifically instruct the jury that an essential element of the offense of aggravated assault on a police officer is knowledge that the victim was a police officer, we found the charge, though deficient, as a whole was adequate to inform the jury of all the elements of the offense. There, the court charged in the language of the indictment that the offense was committed "knowing said officer . . . was a peace officer," and immediately thereafter instructed the jury that the State had the burden of proving each element of the indictment beyond a reasonable doubt. Id. at 562-563. The reasoning of *Cornwell* is inapplicable here for several reasons. Although the aggravated assault count, as read to the jury, stated that the offense was committed "knowing that Officer Tina Dillard was a peace officer," the aggravated battery count contained no language charging such knowledge. Thereafter, the court instructed the jury that the State had the burden of proving every element of the crimes charged, but followed those instructions by defining the elements of the charges of aggravated assault under count one and aggravated battery under count two without any reference to the element of defendant's knowledge that the victim was a police officer. Moreover, the question posed to the jury on the verdict forms did not require the jury to conclude the defendant knew the victim was a police officer, but only whether the offenses were in fact committed on a police officer.

We conclude the charge was inadequate, and the convictions under counts one and two of the indictment must be vacated. Since the State has not expressed a preference for retrial or resentencing,

the case is remanded for either a retrial on these counts, or resentencing on the lesser included offenses of aggravated assault and aggravated battery. *Bundren,* supra at 181-182; *Hudson v. State,* supra at 202; *Britt v. State,* supra at 446.

4. We find no merit in Chandler's claim that the evidence was insufficient to establish that he knew the victim was a police officer, or that it was insufficient to show the officer was engaged in performing her official duties. The State presented evidence showing that Officer Dillard was wearing her DeKalb County officer's uniform when Chandler saw her, recognized she was a police officer, and shot her. Although employed as a police officer for DeKalb County, on the night of the shooting Officer Dillard had been working earlier in the day at her part-time employment providing security for Bank South, and was returning home from a friend's house where she had dinner after leaving Bank South. Nevertheless, when Chandler held her at gunpoint, Officer Dillard reacted in her official capacity as a police officer. "In addition to specified duties, all law enforcement officers have the general duty to enforce the law and maintain the peace. They carry this duty twenty-four hours a day, on and off duty." *Duncan v. State,* 163 Ga. App. 148 (294 SE2d 365) (1982).

*Judgment vacated and remanded with directions in part, and affirmed in part. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JUNE 16, 1992 —
RECONSIDERATION DENIED JULY 7, 1992 —

*Michael Mears & Associates, B. Michael Mears,* for appellant.
*Robert E. Wilson, District Attorney, J. Michael McDaniel, Barbara B. Conroy, Assistant District Attorneys,* for appellee.