## A92A1700. LOWE v. THE STATE.
(430 SE2d 169)

Andrews, Judge.

Lowe appeals the judgment entered on his conviction by jury of one count of possession with intent to distribute methamphetamine and one count of possession of less than one ounce of marijuana.

1. Lowe's first and second enumerations attack the sufficiency of the evidence on the possession of methamphetamine with intent to distribute and the denial of his motion for directed verdict on that count under OCGA § 24-4-8. They will be addressed together.

Viewed in favor of the jury's verdict, the evidence was that on February 8, 1991, Investigator Thomas of the East Metro Drug Team received an anonymous call forwarded to him by the sheriff's office. The female caller did not identify herself, but asked Thomas if he knew Tommy Lowe, defendant, who was currently housed in the Briar Creek Apartments, was selling methamphetamine. Also, according to the caller, Lowe's white Corvette had been seized in a raid near Monticello the day before and a man named Jenkins had been arrested on drug charges.

Agents Thomas and Haymore went to the apartments about 10:00 p.m. and established surveillance. The two agents observed a male come out of the apartment and drive off in a truck with no tag light. They requested uniformed officers who pulled the truck over. Ferguson was driving it and was asked by Agent Thomas where he had been. According to Thomas, Ferguson stated that he had been to "Tommy's" in Briar Creek and he was over there "paying a $40 methamphetamine debt." Ferguson consented to a search and a baggie containing white powder, suspected to be methamphetamine, was found in his pocket and he was arrested.

A no-knock search warrant was obtained for the apartment. Asked by the prosecutor why he got a no-knock warrant, Thomas responded, "I have had dealings with the defendant in the past." The defense objection to this statement as having placed Lowe's character in issue was sustained and the jury was instructed to disregard it, although Lowe's motion for mistrial, which was renewed after the instructions, was denied. Officer Thomas had previously observed Lowe driving the seized Corvette in Monticello, although he did not know who owned the car.

Sheriff's Deputy Edge was familiar with 943 Briar Creek Apartments and had made several responses to domestic type problems there. On one occasion, prior to February 8, Edge was called to the apartment where he spoke with Lane who had previously described the arrangement between her and Lowe as living together at the apartment and being married. Edge located Lowe on that occasion in the vicinity of the apartment in a white Corvette. The maintenance

supervisor and assistant manager of the apartments both testified that they saw Lowe at the apartments frequently and had seen him leave in the mornings driving a white Corvette or van. The assistant manager saw Lowe every day and "assumed he lived there."

At 3:26 a.m. on February 9, the warrant was executed. Upon entry, the officers observed Lowe, dressed only in purple undershorts, running from the hallway/living room area toward the master bedroom. Because Lowe did not stop when ordered by the officers, he was subdued and removed from the apartment. Lane, dressed in a nightie, was given a robe and placed on the couch while the search ensued.

Lowe's wallet was found during the search and contained $200 cash, some rolling papers, and miscellaneous papers. Also found in various locations in the apartment were a High Times Magazine, individual baggies, a kit with razor blades, a brush and small spoon used for snorting drugs. Exhibit 5 was identified as a plastic container of white powder located in the master bedroom. Also, in the bedroom closet was found a triple-beam scale and in the pocket of a pink sweatshirt hanging in the closet agents found 6.1 grams of methamphetamine (Exhibit 16).

In a bedside table drawer, officers found Lane's purse and driver's license, along with an address book and a piece of paper with numerical notes on the left, appearing to be dollar amounts, and in the right column, weighing and gram amounts. Also inside the drawer was found a bag of syringes, razor blades, and other paraphernalia of drug usage.

The crime lab expert testified that Exhibit 16, found in the pocket of the pink sweatshirt in the closet, was positive for methamphetamine. Exhibit 22, removed from Ferguson's pocket, was positive for methamphetamine. Exhibit 23, also removed from Ferguson's possession, was 4.2 grams of marijuana. Exhibit 7 consisted of two pouches found under a towel on the bedside table in the master bedroom. The black pouch contained partially smoked marijuana cigarettes, as confirmed by the crime lab.

Ferguson testified for the State at the trial and contradicted the earlier statement which Agent Thomas testified he had made when arrested. Ferguson testified that he knew Lowe, having worked for him for a few months as a painter. That evening, he went to Lowe's place at 943 Briar Creek Court to repay Lowe some money he had previously borrowed from him to buy groceries. While acknowledging that he had methamphetamine and marijuana on him when arrested, he specifically denied obtaining either drug from Lowe or the Briar Creek Apartments.

Lane also testified for the State, having pled guilty to drug charges arising from this incident. She said that she met Lowe about five years ago and they began dating. They began living together in

December 1986 and remained together three years, at which point Lane moved in with her mother without Lowe. Then, she moved to the Briar Creek Apartments, where she remained for about ten months. She was still seeing Lowe on and off and he stayed with her "sometimes." As she stated, "I saw him three or four times a week and he may spend the night once out of the week." Lowe did not possess a key to the apartment. She further testified that she and Lowe had used methamphetamine together. Sometimes he would obtain the drug, sometimes she would.

On Friday February 8, Lowe came to her apartment and they were going to have company. Before they arrived, Lane placed two lines of what she described as methamphetamine on a mirror, ingested one, and left Lowe alone in the room with the other line. When she returned, the line was gone.

Lane said she, Lowe, and their guests also smoked marijuana that evening. While Ferguson came by that evening, Lowe told her Ferguson was coming by to give him some money he owed him. She denied ever having seen Lowe sell drugs and said the two lines they did that night were hers.

While Lane testified that there was methamphetamine in Exhibit 7, the black pouch, the crime lab expert only identified it as positive for marijuana. The State asked "that was in the black pouch on the night stand at the time of your arrest; is that correct? A. Yes. Q. Whose methamphetamine was that? A. I would say Tommy got it for us."

Lane then claimed that the 6.1 grams of methamphetamine found in the vial in the pocket of the pink sweatshirt belonged solely to her. There was no connection shown between that methamphetamine and the two lines put on the mirror.

While the State also showed her an otherwise unidentified "big baggie" supposedly containing methamphetamine, there is no other evidence indicating that it was methamphetamine or that Lowe had contact with it except Lane's statement that it was "Tommy's."

"In Georgia, a defendant may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8. . . . The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. [Cit.] 'However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. (Cit.) Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. (Cit.)' *Reaves v. State*, 242 Ga. 542, 543 (250 SE2d 376) (1978)." *Castell v. State*, 250 Ga. 776, 780 (1c) (301 SE2d 234) (1983).

Lowe relies on *Ridgeway v. State*, 187 Ga. App. 381 (370 SE2d

216) (1988). There, Ridgeway was found in an apartment in possession of three folded dollar bills containing cocaine. He also acknowledged that money on a nearby table was his. He had a set of keys to the apartment in his pocket. He was convicted of possession with intent to distribute based on heroin and cocaine found in other locations of the apartment.[1]

His conviction for possession with intent to distribute was reversed.

Here, however, there was evidence indicating that Lowe lived in the apartment and quantities of methamphetamine were located there, along with the implements of trafficking, a triple-beam scale, cutting materials, and baggies for packaging.

"Under *White v. State*, 253 Ga. 106, 107 (317 SE2d 196) (1984), 'circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of *every* inference or hypothesis except that of the defendant's guilt.'" *Peppers v. State*, 261 Ga. 338, 339 (1) (404 SE2d 788) (1991).

"Resolution of conflicting theories drawn from evidence is for the jury and it is not our province to reweigh the evidence and their inferences drawn from it. *Holcomb v. State*, 198 Ga. App. 547 (402 SE2d 520) (1991); see OCGA § 24-9-80." *Robinson v. State*, 203 Ga. App. 759, 760 (1) (417 SE2d 404) (1992). Thus, applying the standard of *Jackson v. Virginia*, 443 U. S. 307, 310 (99 SC 2781, 61 LE2d 560) (1979), we hold that the evidence was sufficient to enable a rational trier of fact to find Lowe guilty beyond a reasonable doubt of the offense of possession of methamphetamine with intent to distribute. *Robinson*, supra.

2. The third enumeration alleges error in the allowance of Investigator Thomas' hearsay explanation of his basis for obtaining the search warrant based on accusations against Lowe by the unidentified informant.

While the introduction of this hearsay was defended by the State under the ambit of OCGA § 24-3-2 (to explain the conduct of the officer in obtaining the warrant), such a use does not meet the criteria required by *Teague v. State*, 252 Ga. 534 (1) (314 SE2d 910) (1984); *Ivester v. State*, 252 Ga. 333, 334 (313 SE2d 674) (1984); and *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982). In this case, the introduction of this evidence cannot be said to have been harmless. *Hart v. State*, 174 Ga. App. 134 (1) (329 SE2d 178) (1985); compare *Dawson v. State*, 205 Ga. App. 394 (2) (422 SE2d 280) (1992). The allegations of an unrelated drug deal where a car allegedly driven by Lowe at another time had been seized clearly placed his character in

---

[1] His conviction for simple possession of the cocaine found on his person was affirmed.

issue. *Chandler v. State*, 204 Ga. App. 816, 818 (1) (421 SE2d 288) (1992). The conviction must be reversed.

3. The fifth enumeration also is meritorious. Lowe filed his written request to charge on "two equal theories," encompassed in OCGA § 24-4-6, which the court refused to give, stating "[t]his is where it's all circumstantial."

Since no drugs were found in the actual possession of Lowe, however, this is such a case dependent on circumstantial evidence and it was error to refuse to so charge upon written request. *Arnett v. State*, 245 Ga. 470, 473 (4) (265 SE2d 771) (1980); *Turner v. State*, 194 Ga. App. 878, 879 (1) (392 SE2d 256) (1990); see generally *Lee v. State*, 177 Ga. App. 8 (2) (338 SE2d 445) (1985), cert. denied, 476 U. S. 1116.

4. The fourth enumeration is without merit, since the issue of whether Lowe resided at 943 Briar Creek Court was hotly contested by him and the first "jail card" tendered into evidence was placed there by Lowe, showing another address, and was subject to rebuttal evidence by the State.

*Judgment reversed. McMurray, P. J., and Beasley, P. J., concur. Birdsong, P. J., not participating.*

DECIDED MARCH 19, 1993.

*Albert A. Myers III*, for appellant.
*Cheryl F. Custer, District Attorney, Alan S. Clarke, Assistant District Attorney*, for appellee.