## S02A1743. JONES v. THE STATE.
(577 SE2d 560)

SEARS, Presiding Justice.

The appellant, George Jones, appeals from his conviction for the felony murder of his wife, Kate Jones.[1] On appeal, Jones contends, among other things, that the trial court erred in admitting testimony that improperly implied that Jones fit the profile of a spousal abuser and erred in permitting two witnesses to testify regarding out-of-court statements made to them by his wife. For the following reasons, we conclude that these contentions, as well as Jones's other contentions, present no grounds for reversing his conviction for felony murder. Accordingly, we affirm.

1. At 1:00 a.m. on November 1, 1998, police were summoned to the home of Mr. and Ms. Jones. The couple had been married for 31 years. The victim was dead from a single gunshot wound to the chest. Earlier that day, she had gone to the home of a woman named Ms. Smith, with whom Jones was having an affair. Jones's car was parked in the parking lot of Smith's apartment building, and Ms. Jones knocked on the door of Smith's apartment. Neither Jones nor Smith answered the door. Kate Jones then deflated all of the tires on Jones's car and wrote a message on the windshield with lipstick and left. According to statements that Jones later gave to the police and according to his testimony at trial, his wife's message stated, "Don't come home. If you do, I'll kill you." Smith, on the other hand, stated that, although there were a number of words written on the windshield, she did not see the threat recalled by Jones and only specifically remembered seeing the words "I know."

After cleaning off the windshield and re-inflating the tires to his

---

[1] The crimes occurred on November 1, 1998, and Jones was indicted on June 29, 1999. On July 25, 2000, a jury found him guilty of felony murder and aggravated assault. The trial court sentenced Jones that same day, merging the aggravated assault conviction with the felony murder conviction, and sentencing Jones to life in prison on the felony murder conviction. On August 2, 2000, Jones's trial counsel filed a motion for new trial. Jones, however, subsequently obtained new appellate counsel, who filed a motion for new trial on August 25, 2000. The court reporter completed certification of the trial transcript on February 19, 2001. On April 23, 2001, Jones obtained yet another new attorney to represent him on appeal, and on October 30, 2001, Jones filed an amended motion for new trial. On May 1, 2002, the trial court denied Jones's motion for new trial, as amended, and on May 28, 2002, Jones filed a notice of appeal. The appeal was docketed in this Court on July 31, 2002, and was submitted for decision on briefs on September 23, 2002.

car, Jones went home. He testified that upon arrival, he noticed the driveway gate to the house had been chained. After removing the chain, he went to the house and noticed that it was dark, and that chairs had been propped up against the doors. Jones testified that he was concerned for his wife's state of mind, so he went to the French doors leading to the bedroom. Finding them locked, he kicked them in. Jones further testified that when the doors opened, the victim came at him with a .22 revolver, and that the gun went off accidentally as he tried to take it away from her. Expert testimony showed that when the gun went off, it was either touching the victim or very close to her body. Jones testified that he became so distraught when his wife stopped breathing that he tried to get her to regain consciousness for 20-30 minutes, then covered her with a blanket, and drank a half pint of liquor before calling the police.

When firemen arrived at the scene, Jones opened the door and said, "I think I killed her." Police arrived soon afterward. They found no signs of a struggle. The temperature of the victim's body indicated that she had been dead for several hours longer than Jones's story indicated. The gun that killed the victim was found next to her body, and another gun was found in her purse on the garage floor. The adult children of Mr. and Ms. Jones, as well as two of the victim's co-workers, testified that the victim was never known to carry a gun and that they had never seen one in her purse. Smith testified that Jones had lent her the murder weapon "for protection," but that he had taken it back without explanation about one week before the victim's death. An expert witness testified that the gun required the hammer to be cocked before the trigger could be pulled and that it took 4 3/4 pounds of trigger-pressure to pull the trigger. Police also testified that all of the exterior doors to the house had chairs propped up against the doorknobs.

The Joneses' three children testified that Jones had a history of abusing the victim, and they testified about several specific instances of physical abuse. One example of the abuse involved a fight that began in Mr. and Ms. Jones's bedroom. There was testimony that when Jones and his wife emerged from the bedroom, Ms. Jones, who was backing up, had a bloody nose and face, and Jones was pointing a gun at her chest. The fight ended when Kate Jones and her children ran out of the house and into the street. Ms. Jones and her children went to the hospital, and it was determined that Ms. Jones had a fractured nose and fractured or "floating" ribs. Another incident involved a fight in which Ms. Jones suffered a bloody forehead and two black eyes. This beating was stopped when the parties' son kicked down the door to the Joneses' bedroom. The children also testified that the victim was never the aggressor in the fights between Jones and her.

Having reviewed the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found Jones guilty of felony murder beyond a reasonable doubt.[2]

2. Jones contends that the trial court erred in permitting a State's witness to testify that he fit the profile of a spousal abuser, that that testimony improperly placed his character into evidence, and that his convictions should therefore be reversed. We disagree.

On direct examination, the witness in question testified that a common misconception about domestic violence is that if a person is hit once, the person will leave the relationship; that the inability to leave an abusive relationship applies across the socioeconomic spectrum; that at the beginning of an abusive relationship, the abuser is usually repentant; that the longer such a relationship goes on, the more the victim blames herself for the problems; that the episodes of violence do not repeat with the same frequency and there may be years between incidents; that it is common for abusive relationships to end in death or serious injury; that the victim feels tied to the abuser; that the abuser will abuse the victim emotionally as well as physically; that it is common for an abuser to have affairs; that it is common for victims not to press charges; that the victim feels the responsibility to keep the family together; that victims of abuse rarely speak with others about the abusive relationship; and that the most dangerous time for a victim of an abusive relationship is when the victim tries to leave the relationship. In addition to the foregoing, the witness stated that she had never met or counseled Jones or his wife.

Evidence of a "syndrome" or a "profile" that suggests to the jury that a defendant shares the typical characteristics of a batterer or an abuser is inadmissible unless the defendant "has placed [his] character in issue or has raised some defense which the . . . syndrome is relevant to rebut."[3] Applying this principle to the present case, we conclude that the trial court properly allowed the witness's testimony. Even if we assume that the testimony improperly suggested that Jones has the characteristics of a battering spouse, the evidence was relevant to rebut Jones's defense of accident.[4]

3. Jones also contends that the trial court erred in permitting two witnesses to testify under the necessity exception to the hearsay rule.

However, contrary to Jones's contention, one of the witnesses did

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Sanders v. State*, 251 Ga. 70, 76 (303 SE2d 13) (1983). Accord *Parrish v. State*, 237 Ga. App. 274, 276-277 (514 SE2d 458) (1999).

[4] See *Blake v. State*, 273 Ga. 447, 448-449 (542 SE2d 492) (2001); *Mitchell v. State*, 265 Ga. 71, 72 (453 SE2d 731) (1995).

not testify regarding any out-of-court statements made by Ms. Jones. She simply related her observation that she occasionally saw bruises on Ms. Jones. Accordingly, the trial court did not improperly permit this witness to give hearsay testimony.

The other witness in question, Ms. Moritz, testified that Kate Jones and her husband had a disagreement two weekends before Kate's death. Moritz and Kate had worked together for several decades and, according to Moritz, were extremely close. Moritz testified that about two weeks before Kate's death, she and Kate were leaving work about the same time on Friday afternoon, and that Kate told Moritz that she was not going home. According to Moritz, Ms. Jones stated that she was mad at Jones, and that she was going to a hotel for the weekend. Moritz told Kate that she was going to her cabin in the mountains for the weekend and that Kate was welcome to join her. Ms. Jones decided to accompany Moritz to the mountains. As for the cause of Kate's anger at Jones, Kate told Moritz that about 9:00 p.m. on Wednesday of that week, she and Jones were preparing dinner, and Jones left to meet a friend on a business matter and did not return until midnight. Moritz told Kate that she was overreacting, and Kate called her husband on Friday evening. Moritz added that Kate told her husband that she loved him; that Jones told Kate the same thing; that Jones expressed regret and remorse and told his wife that the home was not the same without her; that the Joneses had a pleasant conversation and did not raise their voices at each other; that everything was fine at the end of the conversation; that Kate told her husband that she would return home the next day; and that the next day, Kate left and returned home.

Because of the innocuous nature of Moritz's testimony and because other evidence of prior difficulties, including evidence that Jones had beaten his wife, that he had assaulted her with a rifle, and that he had had affairs, was far stronger than that offered by Moritz, we conclude that any error in admitting Moritz's testimony was harmless.[5]

4. We have examined Jones's remaining contentions and conclude that they are without merit.[6]

*Judgment affirmed. All the Justices concur.*

---

[5] See *Myers v. State*, 275 Ga. 709, 713 (572 SE2d 606) (2002).

[6] These contentions are that the trial court erred in failing to grant Jones a continuance; that the trial court erred in failing to exclude from evidence the testimony of a State's expert regarding the force necessary to pull the trigger on the murder weapon; and that, for several reasons, Jones received ineffective assistance of trial counsel.

DECIDED FEBRUARY 24, 2003.

*Novy, Jaymes & Vaughan, Eugene Novy, Deborah M. Vaughan*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Madonna M. Heinemeyer*, Assistant Attorney General, for appellee.