A06A1904. HARRIS v. THE STATE.
(641 SE2d 619)

BERNES, Judge.
A DeKalb County jury found Melvin Harris (a/k/a Melvin Parks) guilty of rape, two counts of aggravated assault, and possession of a firearm by a convicted felon. Following the denial of his motion for new trial, Harris appeals his conviction, arguing that there was insufficient evidence to convict him, and that the trial court erred in allowing testimony that he had previously been in prison and expert testimony concerning common misconceptions associated with rape. Harris also argues that he was denied effective assistance from his trial counsel. For the reasons discussed below, we affirm. "It is well established that on appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a

---

[4] As we have previously stated, the evidence did not authorize a charge on the misdemeanor statutory rape.

presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Massey v. State*, 278 Ga. App. 303 (1) (628 SE2d 706) (2006).

Viewed in this light, the evidence adduced at trial shows that Harris raped the victim in order to intimidate her and get revenge for allegations she made to the police that he had inappropriately touched her minor daughter. At the time of the alleged incident, the victim lived in a private residence in DeKalb County with her three children, including her ten-year-old daughter, Sonia. While Harris and the victim had previously been involved in a brief intimate relationship, they were no longer seeing each other romantically at that time.

On Monday, February 9, 2004, Harris and the victim spoke on the phone, and the victim invited Harris to ride around with her as she took her children to dance class and basketball practice, since she wanted to tell him about her new job. Harris accepted the invitation, and the victim along with her three kids picked him up in her van.

Harris and Sonia subsequently got into an argument over who would sit in the front passenger seat. When Sonia would not move from the seat, Harris began poking and touching her. Sonia eventually moved to the back of the van, and Harris got into the front passenger seat. Following the altercation, the victim dropped Sonia off at her dance class and her son at basketball practice. The victim then dropped Harris off at her house while she ran an additional errand.

When the victim picked up Sonia from her dance class, Sonia told the victim that during the argument over who would sit in the front passenger seat, Harris had touched and rubbed her backside. The victim then picked up Harris from her house and drove him home after he denied having inappropriately touched Sonia. After dropping off Harris, the victim asked Sonia what she wanted to do. Sonia said that Harris was lying and that "she wanted to go tell the police." Consequently, the victim took Sonia to the police station, where Sonia and she spoke with an officer. The victim told the officer Harris' first name and cell phone number, but she did not know his last name or address. In the victim's presence, the officer called Harris on his cell phone. During the call, the officer informed Harris that the victim was at the police station making a police report on him.

The victim got back home around 11:00 p.m., put her children to bed, and talked for a while on the phone. Suddenly, the victim saw Harris in the hallway with a gun in his hand, and she began to scream. Harris looked at the victim and said, "Shut up, shut up, don't

move, you do, I shoot you, I kill you." Quickly approaching her, Harris then put the gun up to the victim's head, threatened to kill her and her children, and told her "I'm fixing to have sex with you." When the victim said no, Harris "clicked the gun back like he [was] fixing to shoot it," and out of fear for her life, the victim said "all right." Harris then had sex with the victim, keeping the gun to her head the entire time.

During the rape and assault, Harris told the victim that he was doing this because he was "just not fixing to go back to jail." The rape and assault were to let her know that and to get her back for the allegations made to the police. Harris also told the victim that he was going to get away with the rape because her children had not heard anything and there was no other evidence showing that a rape had occurred. Harris also told her that he had lawyers and sheriffs in his family, that his family had lots of money, that he had family members who were "behind him" no matter what he did, and that as a result he would win in court if she tried to have him prosecuted.

Harris stayed at the victim's home the entire night and had her drive him home the next morning. Later that morning, the victim went to the police station and reported what had happened. The victim then went to the hospital for a physical examination. Analysis of samples taken from her vagina revealed the presence of sperm. The DNA of the sperm matched the DNA of blood samples later taken from Harris.

Harris was arrested on February 18, 2004. At the time of his arrest, Harris had a loaded handgun on his person, although he had previously been convicted of voluntary manslaughter.

1. Harris claims that there was insufficient evidence to convict him of rape and possession of a firearm by a convicted felon.[1] We disagree. Viewed in a light most favorable to the verdict, the evidence adduced at trial was sufficient to authorize a rational trier of fact to find Harris guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) *Rape.* "Under OCGA § 16-6-1 (a) (1), a person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will." (Punctuation omitted.) *Jenkins v. State*, 259 Ga. App. 87, 88 (1) (576 SE2d 68) (2003). At trial, the victim testified that Harris held a gun to her head and forced her to have sex with him

---

[1] The trial court merged Harris' convictions on the two counts of aggravated assault into his rape conviction for sentencing purposes. We therefore decline to consider the sufficiency of the evidence to convict on the aggravated assault counts. See *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

against her will. This testimony was sufficient, in and of itself, to sustain Harris' conviction of rape. See *Perry v. State*, 154 Ga. App. 385 (268 SE2d 747) (1980).

(b) *Possession of a Firearm by a Convicted Felon.* Pursuant to OCGA § 16-11-131 (b), "[a]ny person who has been convicted of a felony by a court of this state and who possesses any firearm commits a felony." (Citation and punctuation omitted.) *Simpson v. State*, 213 Ga. App. 143, 144 (1) (444 SE2d 115) (1994). During the guilt/innocence trial on the rape and aggravated assault charges, the victim testified that Harris pointed a loaded handgun at her head as he raped her, and the arresting officer testified that Harris had a loaded handgun on his person at the time of his arrest. After Harris was found guilty of those offenses, a separate guilt/innocence trial was held on the firearm possession charge, where the state introduced into evidence, without objection, a certified copy of Harris' guilty plea and sentence for the crime of voluntary manslaughter. This testimonial and documentary evidence from the combined proceedings sufficiently established that Harris was guilty of possession of a firearm by a convicted felon. See *Walker v. State*, 281 Ga. 157, 165 (10) (c) (635 SE2d 740) (2006); *Morrison v. State*, 272 Ga. App. 34, 44 (8) (a) (611 SE2d 720) (2005).

2. Harris argues that the trial court erred in allowing the state to elicit testimony from a detective that Harris had previously been in prison, which he contends constituted improper character evidence. Again, we disagree.

As noted above, the victim testified that Harris told her that he was raping her in order to let her know that he was not going to go back to jail and to get her back for the report she and Sonia made to the police. Later during the trial, the state called one of the detectives involved in the case, who was asked whether she had determined from a background check that Harris had been in prison. The detective answered in the affirmative. Defense counsel objected to this testimony and moved for a mistrial. The trial court denied the motion but gave a limiting instruction to the effect that the detective's testimony could only be considered for purposes of showing Harris' motive and the victim's credibility.

We conclude that the trial court properly allowed the detective's testimony and denied the request for a mistrial. The testimony supported the state's theory that Harris' fear of returning to prison motivated him to rape the victim in order to intimidate her and "get back at [her]" for the report made to the police. As such, the testimony "was relevant to show motive[,] and such evidence was not rendered inadmissible by the fact that it may have incidentally placed [Harris'] character[ ] at issue." (Footnotes omitted.) *Napier v. State*, 276 Ga. 769, 773 (3) (583 SE2d 825) (2003) (evidence that defendant had been

in prison and had escaped was admissible to prove motive). See also *Loughridge v. State*, 201 Ga. 513, 515-516 (3) (40 SE2d 544) (1946) (same); *Ware v. State*, 273 Ga. 16, 17 (2) (537 SE2d 657) (2000) (evidence of defendant's disciplinary problems was admissible to prove motive).

Harris relies upon *Racquemore v. State*, 204 Ga. App. 88 (418 SE2d 448) (1992), to support his argument that the detective's testimony was inadmissible. In that case, a store manager testified that after he caught the defendant shoplifting, the defendant told him that he was on probation and was living at a half-way house. Id. at 88 (2). There was no evidence that the defendant's probationary status was a motive for the shoplifting. Id. at 88-89 (2). We therefore held, among other things, that the store manager's testimony was not material or admissible on the issue of the defendant's motive. Id. As such, *Racquemore* is inapposite to the present case, where the detective's testimony clearly was material to the defendant's motive for committing the rape.

3. Harris contends that the trial court erred in admitting testimony from a clinical psychologist opining that it is a common misconception that people will make up rape allegations for the purpose of revenge. We agree that the testimony was improper but find that it did not constitute prejudicial error.

During cross-examination of the victim, the defense suggested that the sexual encounter was consensual, and that the victim had fabricated the allegations that Harris improperly touched her daughter and raped her out of revenge for the fact that Harris was seeing someone else romantically and had made passes at the victim's sister. The state later called Dr. Rae Gordon, a clinical psychologist who specializes in counseling rape survivors. Dr. Gordon subsequently was tendered, without objection, as an expert in the area of rape recovery. During the course of her expert testimony, the state questioned Dr. Gordon about certain "myths" and "misconceptions" associated with rape. As part of this series of questions, the state asked Dr. Gordon, over objection, the following:

> STATE: . . . Is there also a misconception or is there a misconception in the community that to make these things up for purposes of revenge or lie about this sort of thing for purposes of revenge. . . . Is that a misconception that you encounter in your practice?
> DR. GORDON: It certainly is an idea that a lot of people have. It's one of the things people go to when they don't want to believe that it happened or they're trying to make sense of why it happened. It's like, well, are you doing this to hurt the person or did something go wrong and you are upset about

something else. So it is one of the things that people think about when they're trying to make sense of why did this happen and I can't imagine it happening, but clearly it can happen.

"Georgia law forbids expert opinion testimony that . . . implicitly goes to the ultimate issue to be decided by the jury, when such issue . . . is not beyond the ken of the average juror." (Footnote omitted.) *Bruce v. State*, 268 Ga. App. 677, 681 (1) (b) (603 SE2d 33) (2004). See also *Odom v. State*, 243 Ga. App. 227, 228 (1) (531 SE2d 207) (2000). Dr. Gordon's testimony — that it is a common misconception that people make up rape allegations for the purpose of revenge — implicitly went to the ultimate issue to be decided by the jury, namely, whether the victim had fabricated the rape allegation against Harris. And, it is simply not beyond the ken of the average juror to determine whether and under what circumstances a rape allegation has been fabricated. "[W]here (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony." (Citations and punctuation omitted.) *Jennette v. State*, 197 Ga. App. 580, 582 (3) (398 SE2d 734) (1990). Accordingly, Dr. Gordon's testimony should not have been allowed. Cf. *Bruce*, 268 Ga. App. at 681 (1) (a) (expert testimony opining "that children sometime have difficulty distinguishing nightmares from reality" was inadmissible because not beyond the ken of the average juror); *Jennette*, 197 Ga. App. at 581-582 (3) (expert testimony on "lying child syndrome" was inadmissible because jury could determine whether child victim was lying without aid of an expert).[2]

Nevertheless, we conclude that the admission of Dr. Gordon's improper testimony does not mandate a new trial. Where, as here, the error is not a constitutional one, Georgia courts apply the highly probable test to determine whether the error was harmless. *Felder v. State*, 266 Ga. 574, 576 (2) (468 SE2d 769) (1996). Under that test, "[i]f

---

[2] We note that Dr. Gordon's testimony was inadmissible on an additional ground. The testimony could be construed as implying that Harris, by suggesting that the victim accused him of rape out of revenge, fit the common profile of a rapist. As such, Dr. Gordon's testimony was similar to testimony that a defendant fits the common profile of a spousal abuser, which we have held is not admissible, absent a situation where the defendant has put his character in issue or has raised some defense, such as accident, which the profile is relevant to rebut. See *Jones v. State*, 276 Ga. 253, 255 (2) (577 SE2d 560) (2003); *Parrish v. State*, 237 Ga. App. 274, 277 (2) (ii) (514 SE2d 458) (1999).

it is highly probable that the error did not contribute to the judgment[,] then the error is harmless." (Citations and punctuation omitted.) *Brewton v. State*, 174 Ga. App. 109, 111 (2) (329 SE2d 270) (1985).

In applying the highly probable test, we may consider the strength of the evidence against the defendant. *Brewton*, 174 Ga. App. at 111 (2). Here, the state presented direct and circumstantial evidence showing that Harris raped the victim, through the testimony of the victim herself, the forensic evidence matching the DNA of the sperm found in the victim with Harris' DNA, and phone records that corroborated the victim's testimony concerning various phone calls between her and Harris on February 9, 2004.

Furthermore, Harris presented mutually inconsistent defenses. On the one hand, defense counsel repeatedly attempted to suggest that the sexual encounter was consensual and the rape allegation fabricated out of revenge, while on the other hand, the defense (at Harris' insistence)[3] presented alibi witnesses who testified that Harris was at his mother's home on the night of the alleged rape.

Under these circumstances, we conclude that it is highly improbable that Dr. Gordon's testimony contributed to the judgment. The error, therefore, was harmless. Cf. *Felder*, 266 Ga. at 576 (2) (error was harmless, in light of direct and circumstantial evidence presented by the state, compared with "a defense which was in all material respects inconsistent with [the defendant's] pre-arrest statement"); *Vincent v. State*, 264 Ga. 234, 235 (442 SE2d 748) (1994) (error was harmless, in light of victim's testimony and the contradictory and inconsistent statements of the defendant and a defense witness).

4. In several enumerations of error, Harris contends that he was denied the effective assistance of trial counsel.

To establish a claim of ineffective assistance of counsel, [Harris] must show that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). A trial court's finding that a defendant received effective assistance of counsel will not be reversed on appeal unless it is clearly erroneous.

---

[3] At the new trial hearing, Harris' trial counsel testified that the presentation of the mutually conflicting defenses of consent and alibi "absolutely" was "a big problem" and that he had discussed the problem with Harris before trial. However, trial counsel further explained that Harris, who was an extremely difficult client, was "adamant" that the alibi witnesses also testify despite the inconsistencies, and trial counsel felt that "if [Harris] didn't get some things that he wanted strongly, we were going to have more severe problems than we did."

(Citation omitted.) *Williams v. State*, 280 Ga. 539, 542 (2) (630 SE2d 410) (2006). With these standards in mind, we will address each of Harris' claims in turn.

(a) Harris contends that his trial counsel was ineffective for failing to object to portions of Dr. Gordon's expert testimony in which she opined about common patterns of behavior exhibited by rape victims.[4] Dr. Gordon testified that rape victims often exhibit symptoms such as fear, hopelessness, horror, and "issues of trust." She also testified that based on her experience, it was not unusual for rape victims to be afraid to return to the place where the rape occurred, to fear being alone, or to have flashbacks, all of which were behaviors exhibited by the victim in this case. However, Dr. Gordon had never met the victim and never gave her opinion as to whether the victim in this case had in fact been raped.

Harris contends that such testimony improperly bolstered the credibility of the victim and invaded the province of the jury. We are unpersuaded. Under Georgia law, an expert witness may testify "as to the existence of certain typical patterns of behavior exhibited by victims of rape," as long as the jury was permitted to draw for itself the final conclusion as to whether the victim in the case at hand was raped, as was the case here. *Edmonson v. State*, 212 Ga. App. 449, 450-451 (1) (442 SE2d 300) (1994), overruled in part on other grounds, *Curtis v. State*, 275 Ga. 576, 578 (1) (571 SE2d 376) (2002). Accord *Odom*, 243 Ga. App. at 229 (1) (b) (expert testimony that child's behavior following alleged molestation was consistent with sexual abuse was admissible); *Hall v. State*, 201 Ga. App. 626, 626-627 (2) (411 SE2d 777) (1991) (same). Such testimony does "not amount to an expert opinion as to whether the victim had been raped." (Citations omitted.) *Edmonson*, 212 Ga. App. at 451 (1). As such, Harris' trial counsel did not render ineffective assistance by failing to object to Dr. Gordon's testimony concerning common patterns of behavior associated with rape victims, since such an objection would have been unfounded.

(b) Harris claims that his trial counsel was ineffective for failing to object to the victim's testimony that Sonia told her that Harris had

---

[4] During the course of her testimony, Dr. Gordon discussed "rape trauma syndrome" and "post-traumatic stress disorder" ("PTSD"). Harris does not challenge on appeal the competency of expert testimony concerning rape trauma syndrome and PTSD under OCGA § 24-9-67 (2005) and *Harper v. State*, 249 Ga. 519, 524-526 (1) (292 SE2d 389) (1982), and so he has waived any challenge on that specific ground. See *Edmonson v. State*, 212 Ga. App. 449, 450 (1), n. 1 (442 SE2d 300) (1994), overruled in part on other grounds, *Curtis v. State*, 275 Ga. 576, 578 (1) (571 SE2d 376) (2002).

touched and rubbed her "backside."[5] Harris contends that the victim's testimony impermissibly placed his character into evidence and constituted inadmissible hearsay, and that his trial counsel thus should have objected to its introduction. We do not agree.

The state elicited the victim's testimony about the allegation of improper touching as part of its effort to show Harris' motive for committing rape — to intimidate the victim and "get back at [her]" for the report Sonia and she made to the police based on Sonia's allegation. As noted in Division 2, the state is permitted to introduce evidence of the defendant's motive, even if it incidentally puts his character in issue. See *Collins v. State*, 273 Ga. 30, 31-32 (2) (538 SE2d 34) (2000) (evidence that defendant was drug dealer admissible to establish motive for shooting); *Mosely v. State*, 267 Ga. App. 275, 277 (2) (599 SE2d 252) (2004) (evidence of defendant's drug use admissible to establish motive for assault and battery). Hence, the victim's testimony did not constitute improper character evidence.

As to Harris' claim that the victim's testimony conveying what Sonia told her was impermissible hearsay, we note that "testimony is considered hearsay only if the witness is testifying to the declarant's out-of-court statements to prove the truth of the statements." (Citation omitted.) *Waldrip v. State*, 267 Ga. 739, 748 (12) (482 SE2d 299) (1997). The state was not introducing Sonia's allegation in order to prove the truth of that allegation; indeed, the state explicitly told the jury during closing argument that "whether or not that is true is not your concern," and the trial court gave a limiting instruction to that basic effect. Rather, as noted above, Sonia's allegation of improper touching — *of which Harris became aware prior to the rape* — was introduced to show Harris' motive for committing the rape. Accordingly, there was no hearsay problem with the victim's testimony about Sonia's allegations. See *Livingston v. State*, 271 Ga. 714, 720 (6) (524 SE2d 222) (1999) (state was allowed to read into the record the victim's allegations made in a prior armed robbery trial, since the allegations were admitted not to prove the truth of those allegations, but to show the defendant's motive for committing several crimes against the victim prior to retrial of the prior case); *Waldrip*, 267 Ga. at 748 (12) (same). Compare *Roger v. State*, 224 Ga. 436, 438 (1) (162 SE2d 411) (1968) (correspondence reflecting extra-marital affair constituted hearsay and was not admissible to show motive for

---

[5] Separate from his ineffective assistance claim, Harris contends that the trial court erred in admitting the victim's testimony about what Sonia told her. Because Harris did not object to the admission of this testimony below, he has waived this separate claim of error on appeal. See *Brock v. State*, 270 Ga. App. 250, 252-253 (4) (605 SE2d 907) (2004).

homicide, when there was no evidence that the defendant ever saw the correspondence prior to the homicide).[6]

(c) Harris argues that his trial counsel was ineffective because he failed to make a proffer of evidence showing that the victim allegedly had made a prior false allegation of child molestation concerning her daughter. In order to succeed on his ineffective assistance claim, Harris must show how he was prejudiced by his trial counsel's failure to make a proffer at trial. See *Williams*, 280 Ga. at 542 (2). But, to do that, Harris would have had to show at the hearing on his motion for new trial what the proffer would have been. See *Robinson v. State*, 278 Ga. 31, 35 (3) (b) (597 SE2d 386) (2004); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995); *Sewell v. State*, 229 Ga. App. 685, 689 (1) (d) (494 SE2d 512) (1997). This, he failed to do. Accordingly, his ineffective assistance claim fails because Harris "cannot meet his burden of making an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case." (Citation and punctuation omitted.) *Sewell*, 229 Ga. App. at 689 (1) (d).

(d) Finally, Harris contends that his trial counsel was ineffective because he failed to object when the prosecutor argued the following during closing argument:

> One interesting thing that [Harris] mentioned to her, that [Harris] mentioned to [the victim] on the night that this happened, remember he talked to her a lot. But one of the things he kept emphasizing is you won't be able to prove this, you won't be able to do anything to me, I have a plan, my family will do whatever it takes to get me out of this, I have got sheriffs, I have got correction officers, I have a lawyer already lined up, I'm ready for you, you will not be able to do anything about what I'm doing to you right now. What did his family demonstrate to you? That they are more than happy to come to court and lie for him if that is what it's going to take to keep from being convicted in this case. And I would

---

[6] Harris relies upon several cases in an effort to show that the victim's testimony was not admissible. See *Anderson v. State*, 252 Ga. 103, 103-104 (312 SE2d 113) (1984); *Lowe v. State*, 208 Ga. App. 49, 52 (2) (430 SE2d 169) (1993), overruled in part on other grounds, *Kelly v. State*, 212 Ga. App. 278, 282 (2) (442 SE2d 462) (1994); *Chandler v. State*, 204 Ga. App. 816, 818-819 (1) (421 SE2d 288) (1992); *Hart v. State*, 174 Ga. App. 134, 134-135 (1) (329 SE2d 178) (1985). However, in *Anderson*, *Lowe* and *Hart*, the issue was whether the testimony could be admitted for purposes of showing the motivations and course of conduct of a *law enforcement officer* involved in the case, not the defendant. And, in *Chandler*, there was no evidence showing that the testimony at issue aided in establishing the defendant's motive for committing the crime. The cases cited by Harris thus are clearly distinguishable from the present case and do not change the result on appeal.

submit to you, ladies and gentlemen, that there is no reason for them to come in and lie if he hadn't done something.

Harris argues that the prosecutor's statement that his family was "happy to come to court and lie for him" was an improper statement of personal belief, and that his trial counsel thus should have objected. We disagree.

It is true that a prosecutor "may not state to the jury his or her personal belief about the veracity of a witness." (Footnote omitted.) *Bolden v. State*, 272 Ga. 1, 2 (525 SE2d 690) (2000). See also *Shirley v. State*, 245 Ga. 616, 617 (1) (266 SE2d 218) (1980). On the other hand, "it is entirely proper for counsel to urge the jury to deduce such a conclusion from proven facts. Where the argument is based on evidence, conflicts in evidence, or lack of evidence and deductions, even far-fetched deductions, such argument is proper even if it questions the veracity of the defendant." (Citations and punctuation omitted.) *Emberson v. State*, 271 Ga. App. 773, 776 (3) (611 SE2d 83) (2005). See also *Robinson v. State*, 278 Ga. at 36 (3) (c).

Here, the prosecutor's statement was preceded by the prosecutor highlighting "a lengthy list of inconsistencies" between the testimony of Harris' family members and his fiancée and the other evidence in the case, as well as highlighting what Harris told the victim about his family backing him up. *Robinson*, 278 Ga. at 36 (3) (c). Hence, the prosecutor's statement, properly construed in context of the entire closing argument, was not a statement of personal belief, but was instead an argument "based on the evidence and [the] deductions therefrom" that the jury should conclude that Harris' family members were lying. *Emberson*, 271 Ga. App. at 776 (3). Consequently, any objection to the prosecutor's closing argument would have been improper, and so the failure to object cannot now serve as the basis for an ineffective assistance claim.

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 1, 2007.

*Jonathan R. Melnick*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.