## S03A0183. RICHARDSON v. THE STATE.

(580 SE2d 224)

BENHAM, Justice.

William "Al" Hamilton has not been seen since the early morning hours of August 15, 1998. Hours later, Hamilton's house was damaged by a suspicious fire and his car and several bags of coins were missing. In the home, investigators found bloodstains on a bedroom's ceiling and walls that were evidence of the infliction of severe blunt force trauma on a human being, but Hamilton's body was never found. In 1999, appellant Rodney Richardson, the ex-husband of the victim's girlfriend, was convicted of the malice murder of Hamilton, burglary, armed robbery, arson, and theft by taking.[1] He appeals the judgment of conviction.

The State presented evidence that fire officials believed the fire at the victim's home to be of a suspicious origin because they discovered several separate points of origin, smelled gasoline, and saw evidence of forced entry. A witness testified she gave appellant a ride to a site down the street from the victim's home a few hours before the

---

[1] The crimes occurred the night of August 14-15, 1998, and the Richmond County grand jury returned a true bill of indictment against appellant on October 20. Appellant's trial commenced on August 30, 1999, and concluded on September 3 with the jury's return of its guilty verdicts. On November 1, appellant was sentenced to life imprisonment for murder and consecutive sentences of life imprisonment for armed robbery, twenty years for burglary, twenty years for arson, and ten years for theft by taking. His motion for new trial, filed November 3, 1999, was denied August 26, 2002. The notice of appeal was filed September 24, 2002, and the case was docketed in this Court on October 11, 2002. It was submitted for decision on the briefs.

fire. Another witness testified appellant returned home early the morning of the fire with shoes covered in red clay dirt, smelling of gasoline, and with clothes in need of washing. Yet another witness found two bags of coins identified as the bags of coins missing from the victim's home, in her back bedroom after appellant had visited. Several witnesses testified to the strained relationship between the victim and appellant: one witness recalled appellant had attempted to run the victim over with a tow truck in the victim's front yard; another witness mentioned appellant was very upset the day before the fire upon learning the victim had secured the release from jail of appellant's ex-wife; yet another witness testified appellant had asked the witness to obtain a baseball bat and help appellant "jump on" the victim the day before the fire. When the witness declined, appellant said he would take care of it himself. The State also played several audiotapes of conversations between appellant and his ex-wife that took place in her home after the fire and before his arrest. In those conversations, appellant acknowledged having killed the victim, though he had only intended to beat him, and having taken the bags of coins from the victim's home and putting them where they were found.

1. Appellant contends the evidence was insufficient to authorize the jury to find him guilty beyond a reasonable doubt of committing the crimes for which he has been convicted. In particular, appellant questions whether, in the absence of a dead body, the State presented sufficient evidence of the corpus delicti of homicide, "that is, first, that the person alleged in the indictment to have been killed is actually dead, and second, that the death was caused or accomplished by violence, or other direct criminal agency of some other human being. . . ." *Warren v. State*, 153 Ga. 354, hn. 2 (112 SE 283) (1922). See Daniel, Georgia Handbook on Criminal Evidence (2002 ed.), § 1-9 ("Corpus delicti, meaning the 'body of the crime,' requires that the state prove that the crime charged has been committed by someone. [Cit.] Note that it is not necessary to show that the defendant was the person who committed the crime, only that 'someone' had done so.").

The corpus delicti must be proved beyond a reasonable doubt and may be shown by indirect as well as direct evidence. *Wrisper v. State*, 193 Ga. 157, 161 (17 SE2d 714) (1941). To establish the corpus delicti in a homicide prosecution, the State must prove that a death occurred, but there is no requirement that a dead body be produced. *Chancey v. State*, 256 Ga. 415 (1) (A) (c) (349 SE2d 717) (1986). See also *McIlwain v. State*, 264 Ga. 382 (445 SE2d 261) (1994); *White v. State*, 263 Ga. 94 (428 SE2d 789) (1993).

To prove that the missing victim in the case at bar was dead and had died as a result of the criminal act of another, the State

presented evidence that the victim had not been seen since the August 15 fire; that he was a man with personal relationships that, uncharacteristically, he seemed to have abandoned;[2] that he had acted out of character in leaving a car repair job unfinished; and that he had not reported for work since the fire. The State also presented the testimony of two blood-pattern experts and Georgia's chief medical examiner/forensic pathologist who determined from the pattern of bloodstains on the ceiling and walls of the victim's bedroom that a person lying on the bed had been struck at least six times by a blunt instrument that became saturated with blood, with the impact causing blood and tissue matter from the struck person to adhere to the walls and ceiling. DNA testing showed the blood spatters to be that of the victim named in the indictment. While there was a "great deal" of blood on the walls and ceiling, the bed linens on which one might also find pools of blood had been removed from the bed prior to the fire. The chief medical examiner testified that his examination of the blood-spatter evidence led him to conclude the victim was repeatedly struck on the head, causing profuse bleeding and skull fractures and resulting in "lethal injury." The State presented sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the victim was dead, that he had died as a result of the criminal act of another, and that the assailant was appellant. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *White v. State*, supra, 263 Ga. 94 (1). See *Gilchrist v. State*, 466 S2d 988 (Ala. Crim. App. 1984); *Sochor v. State*, 619 S2d 285 (Fla. 1993); *Fisher v. State*, 851 SW2d 298 (Tex. Crim. App. 1993); *People v. Curro*, 556 NYS2d 364 (N.Y.A.D. 1990); *State v. Nicely*, 39 Ohio St. 3d 147 (529 NE2d 1236) (1988); *People v. Modelski*, 164 Mich. App. 337 (416 NW2d 708) (1987); *State v. Pyle*, 532 P2d 1309 (Kan. 1975).

2. Appellant next contends the trial court gave an incomplete charge on the concept of corpus delicti and committed reversible error in its charge to the jury on aggravated assault, the underlying felony of the burglary and felony murder charges.

(a) Appellant asserts the jury was not informed that the State had the burden of proving beyond a reasonable doubt that the person alleged to have been killed is dead and that the defendant was the perpetrator. The trial transcript shows that the trial court told the jury that the State was not required to produce a dead body in order

---

[2] A friend testified that the victim visited him every Monday and had not done so since the fire; that friend and a South Carolina probate judge testified that the victim was the court-appointed conservator for his sister and "caretaker" of his mother and had not cared for them since the fire. The victim's girlfriend testified that she had not seen him since the fire, that they had an appointment on August 16 to look at land which the victim did not keep, and that it was unusual for the victim to agree to do something with her and then fail to appear.

to prove that a death occurred, but could establish the corpus delicti by circumstantial evidence. The jury was then instructed that "[t]he State is required to prove beyond a reasonable doubt that the defendant caused the death of the alleged deceased, Mr. Hamilton, named in the indictment." In addition, the jury was told that the State had to prove every material allegation of the indictment and every essential element of the crimes charged, and that appellant was charged with two types of murder, with each type having as an essential element causing the death of another human being. Looking at the charge as a whole, the jury was instructed that the State had the burden of proving beyond a reasonable doubt that the victim named in the indictment was dead and that appellant had caused that death by committing a criminal act. See *Spradlin v. State*, 160 Ga. App. 132 (1) (b) (286 SE2d 310) (1981).

(b) The indictment alleged that appellant had committed burglary by entering the victim's home without authority and with the intent to commit aggravated assault, and had committed felony murder by causing the victim's death while in the commission of aggravated assault as defined in OCGA § 16-5-21 (a) (2).[3] In its jury instruction on burglary, the trial court's definition of aggravated assault encompassed subsections (1) and (2) of OCGA § 16-5-21 (a). In the instruction on felony murder, the trial court noted that aggravated assault was a felony "and is defined as I have already told you earlier. . . . I have defined for you that felony of aggravated assault. I don't need to go back over that."

The burglary count of the indictment did not set forth the means by which the underlying aggravated assault was alleged to have occurred. It is not usually cause for a new trial that the jury was instructed on an entire Code section when only part of it is applicable under the facts in evidence. *Lee v. State*, 265 Ga. 112 (3) (a) (454 SE2d 761) (1995). The potential for reversible error occurs when the indictment specifies the commission of a crime by only one of several methods possible under the statute, as the felony murder count did, and the entire Code section is charged. See *Dukes v. State*, 265 Ga. 422 (457 SE2d 556) (1995). Since the trial court entered a judgment of conviction and sentence on the verdict finding appellant guilty of malice murder and not on the felony murder verdict, any issue concerning the felony murder count of the indictment is moot. *Pickren v. State*, 272 Ga. 421 (1) (530 SE2d 464) (2000). Accordingly, appellant's assertions concerning the jury instructions set forth no reversible error.

---

[3] The indictment alleged appellant caused the victim's death "by beating him with hands and instrumentality unknown . . . , said hands and instrumentality being objects which when used offensively against a person are likely to or actually do result in serious bodily injury. . . ."

3. Appellant maintains he was not afforded effective assistance of counsel at trial. "To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Cit.]" *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000). Appellant asserts that trial counsel was ineffective when he did not challenge the chief medical examiner's opinion testimony concerning the victim's cause of death, culled from the blood-spatter evidence, or the admissibility of the audiotapes of conversations between appellant and his ex-wife that took place in her home. Appellant also maintains that trial counsel did not listen to the audiotapes prior to trial.

At the hearing held on appellant's motion for new trial, trial counsel testified he was a sole practitioner and an experienced criminal defense attorney at the time he took appellant's case and, pursuant to petitions for voluntary discipline, was indefinitely suspended from the practice of law in 2000. See *In the Matter of Richard O. Ward*, 272 Ga. 369 (529 SE2d 371) (2000); *In the Matter of Richard O. Ward*, 274 Ga. 323 (553 SE2d 796) (2001).[4] He believed the weakest part of the State's case to be the short amount of time in which appellant was thought to have killed the victim, set the house afire and disposed of the victim's body and car in such a manner that neither was ever found. As a result, his defense strategy was to establish the improbability of appellant being the killer due to the short period of time in which appellant could have committed the crime. When asked by the assistant district attorney if there were any important decision in representing appellant that counsel would have made differently had he to do it over again, counsel responded that he had not realized how damaging the blood-spatter evidence would be and would have done more on that front. He acknowledged that, after reviewing the reports of the State's blood-spatter experts before trial, he had contacted two other blood-spatter experts, one of whom agreed with the conclusions reached by the State's experts and the other of whom was not interested in the case.

There is a strong presumption that trial counsel provided effective representation and, as a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. *Berry v. State*, 267 Ga. 476 (4) (480 SE2d 32) (1997). A reviewing court evaluates trial counsel's performance from counsel's perspective at the time of trial. *Grier v. State*,

---

[4] Trial counsel's post-trial disciplinary matters play no role in our review of whether counsel rendered ineffective assistance of counsel since the disciplinary matters did not involve counsel's performance as attorney for appellant. Cf. *Garland v. State*, 235 Ga. 522 (221 SE2d 198) (1975).

273 Ga. 363 (4) (541 SE2d 369) (2001). We conclude that counsel's choice of trial strategy was not unreasonable, especially in light of his pre-trial consultation with blood-pattern experts who agreed with the conclusions reached by the State's experts.

Trial counsel also acknowledged that the comments made by appellant's ex-wife to him that she had been coerced by police into taping conversations with appellant were grounds for a motion to suppress the taped conversations, but described the ex-wife as "a loose cannon" who he "never knew what she was going to do" and who testified on behalf of the State at appellant's trial. The ex-wife testified at the motion for new trial that the lead detective threatened to put her in jail if she did not agree to tape appellant's conversations with her. The lead detective testified that the ex-wife repeatedly paged him to give verbal reports of her conversations with appellant; he recorded her consent to placement of a recording device in her home on the first tape; the recording device was one which she had to activate each time she wished to record appellant's conversation; and he had not threatened her in any way.

When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. *Roberts v. State*, 263 Ga. 807 (2) (e) (439 SE2d 911) (1994). In light of the lead detective's testimony at the hearing on the motion for new trial and the trial court's denial of the motion for new trial, it is unlikely a motion to suppress would have been successful; accordingly, appellant has failed to make the strong showing necessary to establish ineffective assistance. Id.

Trial counsel stated he had listened to the eight-nine hours of recorded conversations between appellant and his ex-wife, an edited version of which was played to the jury by the State. Because he was not aware before trial that the State would be permitted to introduce a redacted version of the tapes at trial and because he knew that portions of the taped conversations suggested appellant only told his ex-wife he had killed the victim because she was "nagging" him about it, trial counsel had the option of playing the tapes in their entirety to the jury or making a redacted version for presentation to the jury. He exercised neither option, having determined that the first "was not a wise thing" and that he did not have time during the trial to do the second. The decision not to play more of the tapes was tactical in nature, and appellant has not established how the failure to play more of the tapes to the jury would have affected the outcome of the case. Id. at 808. Accordingly, appellant did not establish ineffective assistance of trial counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 5, 2003.

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.