S04A0504. ROBINSON v. THE STATE.
(597 SE2d 386)

HINES, Justice.

Michael Robinson appeals his convictions for malice murder, armed robbery, and possession of a firearm during the commission of a crime in connection with the fatal shooting of convenience store owner, Michael Lane. Robinson contends that certain testimony was erroneously admitted into evidence and that he was denied the effective assistance of trial counsel. Finding the contentions to be without merit, we affirm.[1]

The evidence, viewed in favor of the verdicts, showed that at approximately 10:00 p.m. on January 23, 2001, Lane and his employee, Isaiah Green, Jr., were closing Shady's Food Store and locking the exterior doors, when they were approached by Robinson and Vincent Carero. Carero drew a handgun and shot Lane in the back

---

[1] The murder and related crimes occurred on January 23, 2001. On May 16, 2001, a Chatham County grand jury indicted Robinson, along with Vincent Carero, for: Count 1 – the malice murder of Lane; Count 2 – the felony murder of Lane while in the commission of armed robbery; Count 3 – the armed robbery of Lane; Count 4 – possession of a firearm during the commission of the murder of Lane; and Count 5 – possession of a firearm during the commission of the armed robbery of Lane. Robinson was tried before a jury June 4-7, 2002, and was found guilty on all counts. On June 21, 2002, Robinson was sentenced to life imprisonment on Count 1; 20 years in prison on Count 3 to be served consecutively to the sentence in Count 1; five years in prison on Count 4 to be served consecutively to the sentence in Count 1 and concurrently with the sentence in Count 3. Count 2 stood vacated by operation of law, and the trial court found that Count 5 merged with Count 4. A motion for new trial was filed on June 28, 2002, and amended on April 3, 2003, and on April 8, 2003. The motion for new trial was denied on July 22, 2003. A notice of appeal was filed on August 20, 2003, and the case was docketed in this Court on November 25, 2003. The appeal was submitted for decision on January 19, 2004.

and head, fatally wounding him. Robinson grabbed a bag from Lane which contained the day's receipts. A resident of a neighboring house saw the two suspects from a distance and gave police a general description.

Robinson and Carero ran to the nearby home of Quantina Bostic. Quantina Bostic and Robinson had befriended Carero and his twin brother, Victor. Robinson and Carero frequented the Bostic home. After arriving at the house, Robinson and Carero emptied the bag taken from Lane and divided the money in it with Quantina and her mother, Effie Bostic.

The day before the shooting and armed robbery at Shady's, the elderly owners of nearby Futch's Laundromat were robbed at gunpoint. A .38 caliber handgun was taken during the robbery as well as a quantity of candy and cigarettes. Lane was shot with a .38 caliber handgun. Just the month before, on December 22, 2000, there had been an armed robbery at Futch's Laundromat and on January 19, 2001, Alberta Bryant was the victim of an armed robbery at a nearby church.

After receiving information from the uncle of Vincent and Victor Carero implicating Vincent Carero and Robinson in the crimes at Shady's and evidence of frequent contact between the Bostics and the Carero brothers, the police executed a search of the Bostic residence. Robinson and Vincent Carero were at the home and the police discovered items stolen from Futch's Laundromat. Robinson was found carrying a concealed weapon and was arrested on that charge. He and Vincent Carero were taken to the police station for questioning.

Carero gave a videotaped statement to police in which he admitted committing, along with Robinson, the armed robbery and shooting of Lane. He also implicated Robinson, Quantina Bostic, and his brother, Victor, in the January 22, 2001 armed robbery at Futch's Laundromat, and said that the weapon used in the fatal shooting was the .38 caliber handgun taken from the laundromat. He further related that the bag taken from Lane had been burned on Effie Bostic's back porch. A burn mark was found on the back porch of the Bostic residence and the charred remains of a bag were located near the stairs.

Quantina Bostic and Victor Carero, who had entered pleas to charges arising from their criminal involvement, testified about Robinson's part in the crimes at Shady's as well as his participation in robbing Futch's Laundromat.

Effie Bostic testified that on the night of the Shady's robbery, Robinson and Carero ran into her house and said, "Turn off all the lights"; they told her that they had just "got a lick," which she interpreted to mean that they had just robbed someone; Effie helped

count the money taken from Lane, and she received $300 of the stolen funds; later, Robinson and Carero told her that they had committed the armed robbery at Shady's and that Carero had shot Lane.

The State also presented evidence of Robinson's participation in the December 22, 2000, robbery at Futch's Laundromat and in the January 19, 2001, armed robbery of Alberta Bryant.

Robinson presented an alibi defense and argued that he was the victim of false allegations by his co-conspirators, who were trying to frame him. In support of these contentions, Robinson called to the stand a young man who had been in detention with Vincent Carero; he testified that Carero told him that he had shot Lane, that his twin brother had been with him at the time, but that he had implicated Robinson to protect his brother. However, on cross-examination the young man recounted a version of events totally inconsistent with the other presented evidence of the shooting and armed robbery at Shady's. He indicated that Carero had told him that he opened the bag at the scene, found no money, and shot Lane out of anger.

1. The evidence at trial was sufficient to enable a rational trier of fact to find Robinson guilty beyond a reasonable doubt of the crimes for which he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Robinson fails in his contention that he was denied federal and state due process when the trial court admitted, over objection, hearsay testimony by Detective Kelly regarding statements made by Quantina Bostic.

On direct examination, Bostic testified that she had been interviewed by detectives about the armed robbery of Alberta Bryant, but she completely denied remembering the crime as well as the fact that she had given information to the police about the incident. The State then called to the witness stand Detective Kelly, one of the officers who had questioned Bostic, and he testified that Bostic told him that Robinson had committed the Bryant armed robbery, had shown her some credit cards, said he was going to use them at an ATM, and said that he had "ditched" the purse.

Robinson argues that Kelly's testimony regarding Bostic's statement was inadmissible because the State failed to properly impeach her, and that the State should have either read Bostic's prior statement to her or presented it to her so that she could read it and have her memory refreshed. However, the State was not required to follow the procedures urged by Robinson. It was permitted to call the detective to testify regarding Bostic's statement "under the rule in *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), and its progeny. '(A) prior inconsistent statement of a witness who takes the stand and

is subject to cross-examination is admissible as substantive evidence.' [Cits.]" *Gordon v. State*, 273 Ga. 373, 376 (b) (541 SE2d 376) (2001).

3. Robinson contends that he was denied effective representation of counsel as guaranteed by the Federal and State Constitutions. However,

> [i]n order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999). . . . "[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

*Robinson v. State,* 277 Ga. 75, 76 (586 SE2d 313) (2003).

In rejecting Robinson's claim of ineffectiveness, the trial court concluded that Robinson failed to show that trial counsel performed deficiently or that the result of the trial would have been different but for any deficiency; the court explained that instead, Robinson had focused on matters which reflected tactical decisions by counsel. The court found that trial counsel was an experienced criminal defense attorney who contacted witnesses, engaged in extensive pretrial discovery, filed numerous motions, conducted thorough and sifting cross-examinations of witnesses, offered a theory of defense, and presented witnesses in Robinson's defense.

(a) Quantina Bostic testified that she, the Carero brothers, and Robinson had discussed robbing a bank. Robinson's counsel objected, and following a bench conference, the trial court sustained the objection and instructed the prosecutor not to "go into what they might have been planning next."

Robinson asserts that trial counsel was ineffective for failing to ask for curative instructions to the jury because the testimony was hearsay and it "was not an allowed similar transaction and impermissibly placed [his] character into evidence."

However, curative instructions were not warranted because the testimony was not admitted as evidence of a similar transaction, nor

was it inadmissible hearsay. Quantina Bostic testified about statements made between Robinson and his alleged co-conspirators prior to their arrest. OCGA § 24-3-5 provides that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." The testimony was admissible under the co-conspirator exception to the hearsay rule. *Hamilton v. State*, 274 Ga. 582, 586-587 (9) (555 SE2d 701) (2001), citing *Butler v. State*, 270 Ga. 441 (9) (511 SE2d 180) (1999).

(b) Robinson and his mother both testified that on the evening of the murder and armed robbery at Shady's, Robinson was with his mother at a Chinese restaurant. Robinson's mother provided information to trial counsel about potential alibi witnesses, a homeless person and operators of the Chinese restaurant. Robinson contends that trial counsel was ineffective for failing to more promptly interview such witnesses after being furnished the information, that is, had counsel interviewed them when their memories were fresher, they might have remembered Robinson's presence. But the contention is unavailing.

At the hearing on the amended motion for new trial, Robinson's trial counsel testified that, even with the aid of an investigator, he could not locate the homeless individual. He also interviewed the alleged witnesses who worked at the restaurant and they were "uncooperative," "absolutely wouldn't get involved," and would not say that they "had any knowledge of anything." Indeed, the attorney testified that had he put the witnesses on the stand "they said they would have said they knew absolutely nothing about anything," and that would have been worse than their absence.

Also, Robinson did not make a proffer about what the witnesses would have said had they been interviewed earlier. "In assessing the prejudicial effect of counsel's failure to call a witness (whether that failure resulted from a tactical decision, negligent oversight, or otherwise), a petitioner is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case." *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

Finally, Robinson himself testified that he left the restaurant "a little bit after nine" and had returned to his mother's residence by 9:30 p.m. on the night of the shooting. Inasmuch as the shooting took place at approximately 10:00 p.m., witnesses from the restaurant would have no knowledge of Robinson's whereabouts at the time in question.

(c) Robinson claims that his trial counsel was ineffective for failing to object and request a mistrial following certain comments by

the assistant district attorney during closing argument. The assistant district attorney stated in regard to the testimony of the inmate that Robinson called to the stand,

> I submit to you, Ladies and Gentlemen, that that piece doesn't fit, because it's absolutely a lie. Not only is he a thief himself, but he's a liar, and he's lied to you today from the witness stand.
>
> His story about what happened just does absolutely not fit, and you are authorized by the law to discount anything he has to say, based on the complete — completely no corroboration for that fact. No one else in the jail was with him who heard that conversation, and it's totally out of line with everything else that has gone on in this case.

While it is improper for counsel to state to the jury his personal belief as to the veracity of a witness, it is entirely proper for "counsel to urge the jury to deduce such a conclusion from proven facts." *Alexander v. State*, 263 Ga. 474, 477 (1) (d) (435 SE2d 187) (1993), quoting *Shirley v. State*, 245 Ga. 616, 618 (266 SE2d 218) (1980).

The State tendered a certified copy of the witness's prior conviction for robbery. Insofar as the comments about truthfulness, the assistant district attorney's statements were preceded by a lengthy list of inconsistencies present in the inmate's testimony, which plainly brought the inmate's veracity into question. The gravamen of the argument was to urge the jury to find from the inconsistencies that the witness had lied.

Even if the comments are viewed as bordering on the improper, the failure to object to them does not provide a basis for finding that trial counsel was ineffective. Trial counsel testified that he raised objections when he believed that something was critical or would make a difference, and that he did not think the comments were "particularly damaging," given the facts and circumstances with which his client was faced. "The matter of when and how to raise objections is generally a matter of trial strategy." *Gibson v. State*, 272 Ga. 801, 804 (4) (537 SE2d 72) (2000). Here, it cannot be said that trial counsel's decision to forego objection was a professionally unreasonable choice. See *Braithwaite v. State*, 275 Ga. 884, 886 (2) (572 SE2d 612) (2002). It is of no moment that following trial, the attorney might regret the decision to remain silent, for effectiveness is not judged by hindsight or result. *Jackson v. State*, 276 Ga. 94, 96 (6) (575 SE2d 447) (2003).

(d) Lastly, Robinson fails in his contention that trial counsel's use of portions of Vincent Carero's videotaped police interview in which he gave details which corroborated the Bostics' testimony constituted ineffective assistance. The record supports the trial court's finding that Robinson's counsel made a tactical decision to play certain parts of the tape to support the theory that Carero had implicated him out of resentment and retaliation after a detective told Carero that Robinson had incriminated him. Moreover, trial counsel testified that he decided to play the videotape, in part, to explain why the Bostics testified as they did. "[A]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. [Cit.] A reviewing court evaluates trial counsel's performance from counsel's perspective at the time of trial. [Cit.]" *Richardson v. State*, 276 Ga. 548, 552 (3) (580 SE2d 224) (2003). Counsel's tactical decision to play the portion of the videotape in question in order to explain the inculpatory witnesses' motivations cannot, as a matter of law, be found to be professionally unreasonable in light of Robinson's defense that he was framed. Id.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 7, 2004.

*William A. Dowell*, for appellant.

*Spencer Lawton, Jr., District Attorney, Larry Chisolm, Assistant District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.