## A06A1342. PRINGLE v. THE STATE.
### (635 SE2d 843)

MIKELL, Judge.

Marion Pringle was convicted of armed robbery, aggravated assault, kidnapping, possession of a firearm during the commission of a crime and possession of a firearm by a convicted felon. He was acquitted of making terroristic threats. Pringle was sentenced to life in prison for the armed robbery, twenty years concurrent for the aggravated assault, twenty years concurrent for the kidnapping, and five years on the firearm offenses, to be served consecutively. On appeal from the order denying his motion for a new trial, Pringle challenges the sufficiency of the evidence to support his convictions and the effectiveness of his trial counsel. We discern no error and affirm.

1. Pringle's assertion that the evidence does not support the verdict is meritless.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility.[1]

Viewed in its proper light, the evidence shows that at approximately 2:00 p.m. on September 30, 2003, Logan Petree, a student at the Savannah College of Art and Design ("SCAD"), was accosted by two men as he entered his car outside of his home near the intersection of Bull and 38th Streets. One of the men, whom Petree later identified as Pringle, asked Petree for a ride. When Petree declined, Pringle then pulled out a gun and ordered him out of the car. When Pringle saw that the car had a manual transmission, however, he ordered Petree to give him and his friend a ride. Pringle sat in the back seat behind Petree, and the other suspect sat in the passenger seat. They asked Petree for money, which he said he did not have. The suspect in the passenger seat then found a receipt, which he mistook for a bank receipt, in the seat cushion, and erroneously assumed that Petree had $1,000 in his bank account. This suspect directed Petree to drive to an automated teller machine (ATM) and withdraw $500. While driving, Pringle said to the other suspect, "[t]his kid's going to run on us. We should cap him."

---

[1] (Footnote omitted.) *Buruca v. State*, 278 Ga. App. 650-651 (629 SE2d 438) (2006).

Finally, Petree arrived at an ATM and unsuccessfully tried to withdraw $500. The same thing happened at another ATM where Petree was ordered to drive. He told the suspects that he did not have $500 in his account and obtained a receipt from the second ATM showing a balance of $370. Petree withdrew $360 and gave it to the suspect in the passenger seat. Pringle then told Petree to drive a little ways and turn off the engine. The suspect in the passenger seat said "no," that Petree had done as asked, and told him to leave the car running. The suspects got out of the car, and Petree sped to the courthouse, where he found a police officer and reported the incident.

The suspects did not wear masks or otherwise attempt to conceal their appearance, and Petree was able to describe them to the police. He identified Pringle from a photo array, at a preliminary hearing, and at trial as the suspect who held the gun. Petree testified that he viewed Pringle repeatedly in the rearview mirror, that Pringle was wearing "rectangular glasses . . . with a yellowish tint," had a beard, and was a big, heavy-set guy with short hair.

Detective Cameron Kovach testified that he was dispatched to the courthouse, met with Petree at 2:40 p.m., and obtained a description of the suspects. The description of Pringle did not include the fact that he had been wearing glasses. Detective J. D. Kelly, a 33-year veteran of the Savannah Police Department,[2] testified that on October 9, 2003, he learned of a similar armed robbery of a SCAD student that had occurred on the previous day. That incident involved three suspects, all of whom were arrested. Kelly placed them in three different photographic lineups. Kelly testified that he first placed Pringle's photograph in an array in which none of the men, including Pringle, were wearing glasses. Petree did not make a positive identification at that time. After Petree left, Kelly reviewed his report and realized that Petree had described the suspect as having worn glasses. A forensic team constructed a photographic lineup of men wearing glasses. Upon viewing that lineup, Petree immediately selected Pringle's photo as that of the man who robbed him.

Evidence of the similar incident was admitted at trial. Kevin Samuel Phillips, the victim, testified that at approximately 9:00 p.m. on October 8, 2003, he parked in front of his house and got out of the car. At that moment, he was accosted by an armed man, whom Phillips later identified as Pringle, who told Phillips to get back into the car. Pringle was accompanied by two suspects, and all three men got in the car. Pringle sat directly behind Phillips and held a gun to Phillips' head during the entire 40-minute ordeal. Phillips observed Pringle through the rearview mirror. The suspects told Phillips to

---

[2] The Department is now called the Savannah-Chatham Metropolitan Police Department.

drive around, took his wallet out of his pocket, removed $8, and demanded more money. Phillips testified that the suspects told him to drive to his bank and withdraw $1,000. When he said he did not have that much money in his account, they demanded $500. Phillips informed the suspects that he had only $58 in his account, but before he could withdraw money from the ATM, a car came up behind them, and the suspects ordered him to drive away. They ordered him to drive to another bank and use his credit card to make a cash advance, but he could not, because he did not know his personal identification number. The suspects became very agitated and ordered Phillips to drive to another bank, where he was only able to withdraw $40. He gave the cash to one of the men, jumped out of the car, ran to a gas station, and called the police.

A description of Phillips' vehicle was dispatched over the radio, and Officer Randall Powell testified that he observed the vehicle, initiated a traffic stop, and assisted in taking three men into custody, including Pringle. Pringle had been sitting in the back seat, and a semiautomatic weapon was found on the floorboard. Phillips identified all three suspects from photographic arrays.

Detective Lara Mohler, who investigated the similar incident, testified that she obtained a statement from Pringle. Pringle told Mohler that the encounter with Phillips had been an aborted drug transaction. Pringle stated that Phillips had wanted to buy crack cocaine but did not have enough money and offered items in his car in exchange for drugs. Later Pringle claimed Phillips gave him $28. When asked to explain the presence of his fingerprints on the gun found in Phillips' car, Pringle acknowledged that he had touched, and even shot, the weapon, but "not that day." Ultimately, Pringle stated that he was guilty. Pringle and the other two suspects were charged with armed robbery and kidnapping in connection with this incident. Mohler also testified that Pringle was wearing glasses at the time of his arrest.

Pringle took the stand. He testified that he did not know Petree and denied committing any offenses against him. Pringle claimed that he knew Phillips through selling him drugs at two housing projects. Pringle admitted that he and the other suspects were in Phillips' vehicle and that when the drug deal went sour, Phillips jumped out of the car and another suspect, Jenkins, jumped into the driver's seat. Pringle testified that he told Mohler he was guilty for selling drugs, not for the armed robbery. He also admitted that he had been wearing glasses all of his life and that he had no alibi witnesses to vouch for his whereabouts on the day of the crimes against Petree. Trial counsel argued that Petree had misidentified Pringle.

Phillips testified that he had never seen Pringle before the night of the armed robbery and had never had any dealings with him.

Based on the evidence, the jury found Pringle guilty on all counts except making terroristic threats.

Pringle contends that the evidence does not support his conviction because there was no "independent corroboration of the alleged victim's testimony." But

> the testimony of a single witness is generally sufficient to establish a fact, and this includes a victim's uncorroborated identification of an assailant. The lack of corroboration goes only to the weight of the evidence and the victim's credibility, matters which are solely within the purview of the jury. Thus, even though [Petree] is the only witness who could testify that [Pringle robbed] him, that testimony was enough to establish [Pringle's] identity as one of the assailants.[3]

Moreover, even if corroboration were needed, the similar transaction provided evidence of Pringle's identity, which is one of the purposes for which it was introduced. Accordingly, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Pringle was guilty of the charged offenses.[4]

2. Pringle next contends that the trial court erred in denying his motion for new trial on the basis of ineffective assistance of counsel. We disagree.

> Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[5]

---

[3] (Footnotes omitted.) *Parham v. State*, 255 Ga. App. 608, 609 (565 SE2d 913) (2002). Accord *Bradford v. State*, 274 Ga. App. 659, 660 (1) (618 SE2d 709) (2005); *Eady v. State*, 273 Ga. App. 261, 262 (614 SE2d 868) (2005).

[4] We note that the trial court's reference in its order denying the motion for new trial to the sufficiency of Pringle's guilt "as a party to the crime of felony murder" appears to be a typographical error.

[5] (Citation and punctuation omitted.) *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995).

Failure to satisfy either prong of this test is fatal to an ineffective assistance claim, and we need not address the deficient performance prong if the showing on the prejudice prong is insufficient.[6]

(a) Pringle first argues that his counsel rendered ineffective assistance by failing to file a motion for funds to hire an expert on the reliability of cross-racial eyewitness identification. This argument fails, however, because Pringle has not demonstrated that the outcome of his trial would have been different had counsel requested funds and called such a witness. To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant "is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case."[7] "Absent a proffer of what the testimony of his expert would have been at trial, [Pringle] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course."[8] Having failed to show prejudice, Pringle has not borne his burden of proving ineffectiveness on this ground.

(b) Pringle next alleges that trial counsel was ineffective because he did not seek verification that funds had been withdrawn from the respective ATMs on the date of the crime and because he did not seek to ascertain whether surveillance cameras at the banks "might" refute the state's evidence that Pringle was in the carjacked vehicle. Pringle cannot show prejudice with regard to these assertions, however, because he made no proffer as to what a thorough investigation would have revealed.[9] Pringle offered no more than "speculation regarding the content of such alleged potential favorable evidence, which is insufficient to sustain a claim of ineffective assistance of counsel."[10]

(c) Finally, Pringle argues that trial counsel was ineffective because he did not inquire into any possible relationship between the two victims that would suggest complicity to avoid being implicated in illicit drug activity. However, Pringle did not call the victims to testify at the hearing on the motion for new trial. Absent a proffer of favorable testimony, Pringle has again failed to show prejudice.[11]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

---

[6] See *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997).

[7] (Citation and punctuation omitted.) *Ware v. State*, 273 Ga. 16, 17-18 (3) (537 SE2d 657) (2000). Accord *Robinson v. State*, 278 Ga. 31, 35 (3) (b) (597 SE2d 386) (2004).

[8] (Citation and punctuation omitted.) *Cupe v. State*, 253 Ga. App. 851, 856-857 (3) (e) (560 SE2d 700) (2002).

[9] See *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

[10] *Hampton v. State*, 279 Ga. 625, 628 (5) (619 SE2d 616) (2005).

[11] See *Robinson*, supra.

DECIDED AUGUST 22, 2006.

*Gary M. Newberry*, for appellant.
*Spencer Lawton, Jr., District Attorney, Larry Chisolm, Assistant District Attorney*, for appellee.