### A09A2021. SULUKI v. THE STATE.
(691 SE2d 626)

SMITH, Presiding Judge.

Talib Din Suluki appeals from his convictions for possession of a firearm by a convicted felon and carrying a concealed weapon. He contends that the trial court erred by denying his ineffective assistance of counsel claims and by admitting the handgun into evidence over the objection of defense counsel. He also asserts that insufficient evidence supports his conviction. For the reasons set forth below, we reverse.

1. Suluki contends that he received ineffective assistance of counsel because his lawyer failed to move to suppress the gun that formed the basis of the State's charges against him.

The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome

of the proceedings would have been different but for counsel's deficiency.

(Citation, punctuation and footnote omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. [Cit.]" *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003).

Because counsel did not file a motion to suppress, we must review the trial testimony to determine if Suluki can make a strong showing that the evidence would have been suppressed if the motion had been filed. *Richardson*, supra, 276 Ga. at 553 (3). In this case, the record shows without dispute that police officers assigned to a fugitive task force unit went to a hotel to arrest Denarryl Head and Miche Hunt based upon warrants for their arrest in connection with a murder. The officers had a picture and description of Head when they went to the hotel. When they arrived at the hotel, they confirmed that Miche Hunt had registered for two rooms. When officers saw Hunt come into the hotel lobby, they arrested her. When the officers explained that they were also looking for her boyfriend, Head, Hunt told them that he had left the hotel an hour earlier to get something to eat. She explained that Head and another man, later identified as Suluki, "would be returning back shortly." Finally, she told the police that a third man was still in her room.

The police went to her room, room 330, "to make sure that the person that she was saying was still in the room was not in fact [Head] and she was not trying to throw us off as to his whereabouts." When they went to the room, they confirmed that the occupant was not Head and relocated the man to a conference room on the first floor. In room 314, the police found Suluki's girlfriend and daughter, who were also relocated to the first floor. Suluki's girlfriend gave the police a description of Suluki and of the car Suluki and Head were driving.

Hunt also told the police that Head would become suspicious and not return to the room if she did not answer the phone. After learning that Suluki and Head visited one another's rooms frequently, the police decided to station officers inside both rooms. Officers were also placed "in the parking lot watching and waiting for their return. They identified the two subjects and stated or alerted [other officers] that they would in fact be coming up .to the rooms." Because the officers did not know whether the men would go to separate rooms or the same room and Hunt had informed them that Head was armed, they "decided that whoever came to the room

we would detain the individual at that point coming into the room until we could determine which one was [Head]."

One officer testified that when Suluki entered his hotel room, the officers "immediately, for their safety, you know, took the subject which ended up being Mr. Suluki to the ground and detained him to further the investigation, but they did so for their safety considering the circumstances." He also testified that when the officers heard Suluki they "came outside to take him down in the hallway instead of allowing him, for tactical reasons, for safety reasons, instead of allowing him to come in the room and surprise them."

Suluki testified that when he came to his room, he was carrying three trays, two drinks and the room key. Because of everything in his hands, he tried to kick the door open. He testified, "And when I kicked the door it was officers that slammed the door and they, I don't know, like they was trying to reach for me so I threw the food like this like shock. I ain't really know it was like officers, they was like plain clothes." Suluki also testified that when the room door first opened, there was a pistol in his face. When he started running through the hallway, the police said "ATF, or Atlanta P.D." Suluki testified that he then "slowed down and fell to the ground." After he was on the ground, Suluki testified that an officer grabbed him and placed him in cuffs while other officers kicked him and beat him. They also asked him if he knew anything about a murder. Suluki denied possessing a gun and claimed that the police told him they would frame him for possessing a gun if he did not tell them about the murder.

One officer testified that after Suluki was handcuffed in the hallway, the officer "went there to pick the person up off the floor." As he was picking up Suluki, the officer "noticed what I felt may have been a handgun in his waistband, rear waistband. He was laying [sic] face down when I went to pick him up and I grabbed it and pulled it out and definitely it was a handgun."

We find that the evidence presented at trial satisfies Suluki's burden of demonstrating "a strong showing that the damaging evidence would have been suppressed had counsel made the motion. [Cit.]" *Richardson*, supra, 276 Ga. at 553 (3). "An arrest warrant is valid only against the person named in it. An officer arresting one not bearing the name set forth in the warrant acts at his peril. And even though he acted in good faith in arresting another than the person named, the warrant will not justify the action." (Citations and punctuation omitted.) *Grant v. State*, 152 Ga. App. 258 (1) (262 SE2d 553) (1979).

We find no merit in the State's contention that we should conclude from this record that Suluki was not arrested, but merely detained in a second-tier *Terry* stop until the officers could determine

whether he was the person named in the arrest warrant.

> The test for determining whether a person has been placed under custodial arrest is whether the individual was formally arrested or restrained to a degree associated with a formal arrest, not whether the police had probable cause to arrest. The test is whether a reasonable person in the suspect's position would have thought the detention would not be temporary. A trial court deciding whether to admit evidence must apply this objective test; it is the reasonable belief of an ordinary person under such circumstances, and not the subjective belief or intent of the officer, that determines whether an arrest has been effected.

(Citation, punctuation and footnotes omitted.) *State v. Fisher*, 293 Ga. App. 228, 230 (666 SE2d 594) (2008). In this case, the trial testimony demonstrates a strong showing that a person in Suluki's position would have believed that his detention would not be temporary. The police surprised him from inside his room, he either fell or was taken down to the floor by police officers, placed in handcuffs, and questioned about a murder before the gun was located by the police.

Based upon the facts developed during trial, we conclude that trial counsel's performance was defective because he failed to move to suppress the only piece of State's evidence against Suluki in this case. See *Perez v. State*, 284 Ga. App. 212, 217 (3) (a) (643 SE2d 792) (2007). A reasonable probability also exists that the outcome would have been different if Suluki's counsel had filed such a motion. Id.

2. Suluki also argues that insufficient evidence supports his convictions. We disagree. The State presented evidence that Suluki possessed a handgun that was concealed in the waistband of his pants and that Suluki was a convicted felon. See OCGA §§ 16-11-131 (possession of a firearm by a convicted felon); 16-11-126 (carrying concealed weapon).

3. Based upon our holding in Division 1, Suluki's remaining claims of error are rendered moot.

*Judgment reversed. Phipps and Bernes, JJ., concur.*

DECIDED MARCH 9, 2010.

*David J. Walker*, for appellant.

YALE LAW LIBRARY

*Tracy Graham-Lawson, District Attorney, Anece Baxter White, Assistant District Attorney,* for appellee.